IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| A. M. ELSHINNAWY | : | CIVIL ACTION |
| v. | : | |
| JO ANNE B. BARNHART, | : | |
| Commissioner of Social Security | : | NO. 05-3061 |

REPORT AND RECOMMENDATION

JACOB P. HART
UNITED STATES MAGISTRATE JUDGE                                            February  15, 2006

      A. M. Elshinnawy brought this action under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying his claim for a waiver of recovery of an overpayment of Retirement Insurance Benefits ("RIB").  The parties have filed cross-motions for summary judgment.  For the reasons that follow, I recommend that Elshinnawy's motion be denied and the Commissioner's motion be granted.

      Because this case concerns RIB instead of the more usual denial of disability benefits, I will first briefly discuss the legal framework.

I.     Legal Standards

      As in a disability case, the role of this court on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence.  42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389 (1971); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986); Newhouse v. Heckler, 753 F.2d 283, 285 (3d Cir. 1985).  Substantial evidence is relevant evidence viewed objectively as adequate to support a decision.  Richardson v. Perales, supra at 401; Kangas v. Bowen, 823 F.2d 775 (3d Cir. 1987); Dobrowolsky v. Califano, 606 F.2d 403 (3d Cir. 1979).  Moreover, apart from substantial evidence inquiry, a reviewing court must also ensure that the ALJ applied the proper legal standards.  Coria v. Heckler, 750 F.2d 245 (3d Cir. 1984).

      The Social Security Administration ("SSA") determines an individual's RIB by calculating his or her primary insurance amount ("PIA").  The PIA is based on a percentage of the individual's average indexed monthly earnings.  42 U.S.C. § 415(a).  The average indexed

monthly earnings are determined by dividing the total paid in by an individual by his benefit computation years. § 415(b)(1). Benefit computation years equal the number of elapsed years minus 5 years. § 415(b)(2). Elapsed years are defined as "the number of calendar years after 1950 (or, if later, the year in which the individual attained age 21) and before the year in which the individual…attained age 62." § 415(b)(2)(iii). However, elapsed years exclude "any calendar year entirely included in a period of disability." Id.

When an individual is receiving both Social Security benefits and a benefit from non-covered employment, such as a civil service annuity or pension ("CSA"), the PIA is calculated through an alternate formula called the windfall elimination provision ("WEP"). 42 U.S.C. § 415(a)(7)(A). As its name suggests, the WEP offsets the amount of the RIB due to the CSA by reducing the percentage (from 90% to 40%) used to calculate a claimant's PIA. Id. The WEP applies to a claimant who 1) becomes eligible for benefits after 1985 and 2) receives a monthly payment based on non-covered employment. Id. The WEP applies the first month that the individual receives both Social Security and CSA benefits. Id.

When a claimant's RIB should have been calculated with the WEP but wasn't, it results in an overpayment to the claimant. The claimant then may request reconsideration and also waiver of repayment. Waiver is appropriate when the claimant is 1) "without fault" in causing the overpayment, and 2) recovery would defeat the purpose of Title II of the Social Security Act. 42 U.S.C. § 404(b). Recovery would defeat the purpose of Title II if the individual needs substantially all of his current income to meet his ordinary and necessary living expenses. 20 C.F.R. § 404.508. Both prongs of this test must be met in order to waive recovery.

To determine if an individual is without fault, all physical, mental, educational, or linguistic limitations are considered. Id. Factors used to determine fault are: 1) an incorrect statement by an individual which he knew or should have known to be incorrect, 2) failure to furnish information which he knew or should have known to be material, or 3) acceptance of a payment which he either knew or could have been expected to know was incorrect. 20 C.F.R. § 404.507.

Only if the individual is without fault will it be necessary to determine whether recovery would defeat the purpose of Title II.  This determination requires an assessment of an individual's income, assets, and expenses.  Id.; Social Security Ruling 74-28.

II.    Facts and Procedural Background

Elshinnawy was born on February 1, 1933.  Record at 222.  He was born in Egypt and came to the United States in 1959, becoming a citizen in 1971.  Record at 223.  He completed graduate work in 1966.  Record at 227-8.  He worked as an engineer in private industry for 20 years and then worked with the Navy for another 10 years.  Record at 224.

On November 12, 1997, Elshinnawy filed an application for RIB.  Record at 36.  The application indicates that Elshinnawy knew that he would be receiving a CSA from the Navy, which was not covered by Social Security.  Record at 36-7.  It also indicates that he understood that the CSA would cause an offset of his Social Security benefit.  Id.  He agreed to notify the SSA of the amount of the CSA "so as to avoid any overpayment from Social Security."  Record at 37.

On December 16, 1997, Elshinnawy received an introductory letter from the Civil Service Retirement System.  Record at 187.  The letter noted that his CSA payments would begin in about a week.  Id.  On January 2, 1998, Elshinnawy received an interim CSA payment covering all of 1997.  Record at 188.  The letter also indicated that the amount of monthly payment had not yet been determined, but it would be sent to him once it was.  Id.  On February 1, 1998, Elshinnawy received his final interim CSA payment, covering benefits from the year he attained the age of 62, or 1995.  Record at 116.  At that time, he also received a statement that his monthly payment as of December 1997 was $574.00.  Id.

Elshinnawy received his first RIB payment in February 1998.  Record at 55.  On June 26, 1998, Elshinnawy notified the SSA of the amount of his CSA.  Record at 115.  The SSA did not immediately offset the amount of Elshinnawy's RIB payments due to the CSA.  However, it finally did so in March 2000.  Record at 56.  The record indicates that Elshinnawy was first

3

notified of the overpayment sometime in February 2000, and received a smaller RIB check that March.  Record at 47, 51, 53 and 56.  On May 3, 2000, the SSA sent Elshinnawy a letter explaining that because he had received a $5,791.00 overpayment due to the CSA, Elshinnawy could either reimburse the SSA for that amount, or the SSA would withhold an amount from his monthly payments until the overpayment was recaptured.  Record at 139.

On July 11, 2000, Elshinnawy submitted a Request For Waiver of Overpayment Recovery asserting that he was not at fault for the overpayment.  Record at 39.  Elshinnawy did not complete Section II of the form, which asks for the claimant's current financial status.  Record at 41-5.  On the Report of Contact form dated the same day, an SSA employee noted that Elshinnawy knew the overpayment was caused by his receipt of benefits under a CSA.  Record at 47-8.

On August 3, 2000, the SSA wrote Elshinnawy to determine if he was asking solely for a waiver of the overpayment or if he was also asking for reconsideration of the amount of the overpayment.  Record at 49.  On August 15, 2000, Elshinnawy filed a Request for Reconsideration noting that he knew the WEP was being applied to him due to his CSA, but that it should not have been applied to him.  Record at 51.

On April 8, 2002, the SSA upheld the initial determination that the WEP was applied correctly due to Elshinnawy's CSA.  Record at 52-7.  In this decision, the SSA reviewed in detail how to calculate the RIB and how the RIB is calculated differently when the WEP applies, resulting in a smaller RIB because of a pension from non-covered employment.  Id.  The calculations supported the SSA's conclusion Elshinnawy was overpaid $5,791.00.  Record at 57.  On May 20, 2002, Elshinnawy agreed to withhold $161.00 from his monthly check in order to repay the overpayment, although he still was pursuing an appeal.  Record at 62.

On June 7, 2002, Elshinnawy requested a hearing in front of an administrative law judge ("ALJ").  The hearing was originally scheduled for January 31, 2003.  At that hearing, Elshinnawy indicated that he would like to be represented by an attorney.  Record at 204.  On

March 5, 2003, an attorney entered his appearance on behalf of Elshinnawy. Record at 32. Nevertheless, when a hearing was held on March 7, 2003, Elshinnawy was again unrepresented. Record at 207-218. He indicated that he wanted to continue with the hearing without an attorney. Record at 210.

On May 27, 2003, the ALJ issued an unfavorable decision, finding that Elshinnawy was not without fault in receiving the overpayment because he knew that his CSA would offset his RIB. Record at 93. Further, although Elshinnawy argued that there had been an error in the calculation of the overpayment, the ALJ found that the calculations completed by an experienced SSA employee were more probative as to the amount of the overpayment. Record at 94. Therefore, the ALJ found that the amount of the overpayment was correct, and that Elshinnawy was not without fault in receiving the overpayment. Id. For this reason, the ALJ denied Elshinnawy's request for a waiver of repayment. Accordingly, on June 30, 2003, Elshinnawy appealed this decision. Record at 96.

On February 9, 2004, the Appeals Council remanded the case back to the ALJ for a supplemental hearing and a new decision based on evidence not previously presented to the ALJ. Record at 99. Specifically, Elshinnawy produced his letter dated June 26, 1998, discussed above, as evidence of his notifying the SSA regarding his CSA benefits. Id. The Council directed the ALJ to consider this new evidence, determine whether the WEP was applied correctly, and if there was in fact an overpayment, whether Elshinnawy was at fault in causing it. Id.

On October 18, 2004, Elshinnawy attended a third hearing in front of the ALJ. Record at 220-250. At this hearing, Elshinnawy was represented by an attorney and testified to why the WEP was improperly calculated and applied, and why he was not at fault for the overpayment. Id.

On November 5, 2004, the ALJ issued another unfavorable decision. Record at 157–165. The ALJ found that 1) the WEP was properly applied, 2) the WEP was properly calculated, and 3) waiver of repayment is inappropriate because Elshinnawy was not "without fault." Record at

164. On January 6, 2005, Elshinnawy requested a review of this decision. Record at 22.

On May 3, 2005, the Appeals Council affirmed the ALJ's decision in a six-page written decision. Record 7-15. The Council agreed that the WEP was properly applied and calculated, and that recovery of overpayment could not be waived because Elshinnawy was not without fault. Record at 15. On June 27, 2005, Elshinnawy filed this appeal.

III.     The Appeals Council's Decision and Elshinnawy's Motion for Summary Judgment

The Appeals Council first decided that Elshinnawy's RIB were calculated properly. Record at 12-4. Based on the calculations of the SSA, and the fact that Elshinnawy was never legally disabled, the number of months used to calculate the RIB was correct. Id.

The Council then decided that Elshinnawy was subject to the WEP, which when applied, resulted in Elshinnawy receiving an overpayment. Id. Because he received a pension from a non-covered employment, the amount of his RIB was required to be calculated by the WEP, an alternate formula used to calculate RIB.

Finally, the Council decided that recovery of this overpayment was not waived because Elshinnawy was not "without fault" in causing the overpayment. Id. Elshinnawy knew the RIB would be offset by a CSA from non-covered employment. Elshinnawy failed to properly inform the SSA of the amount of his CSA. Id. And once he did inform the SSA, for 20 months Elshinnawy continued to accept RIB that had not changed. Record at 14. Therefore, he received benefits that he could have known were incorrect. Id.

In his motion for summary judgment, Elshinnawy first asserts that the SSA improperly calculated the amount of his RIB since the SSA did not take into consideration that he was a student for five years when he first came to the United States. Second, Elshinnawy maintains that the WEP was erroneously applied to him, and that he should not have been assessed as receiving an overpayment. Third, Elshinnawy argues that recovery of the overpayment should be waived because he is not at fault for the overpayment, and further because recovery of the overpayment would defeat the purpose of the SSA.

IV.     Discussion

A.      The RIB Calculation

The Council correctly determined that Elshinnawy's RIB were calculated properly. Record at 12-3.  The Council dismissed Elshinnawy's argument that his RIB should have been calculated using a smaller number of elapsed years.  Record at 13.  Secondly, the Council could find no authority supporting Elshinnawy's argument that his years as a student should not be counted toward his elapsed years since he was unable to work during that time.  Record at 14. As discussed above, RIB are determined by calculating an individual's PIA which depends on the number of elapsed years, excluding periods of disability.  See supra, p. 2.

First, it appears from the record that the SSA used the correct number of elapsed years to calculate Elshinnawy's PIA.  The reconsideration decision Elshinnawy received from the SSA in April, 2002, stated that "elapsed years" was calculated  by reference to the number of years "after the year of attainment of age 22."  Record at 54.  However, the ALJ explained that this was a typographical error, and that the statutory language reads "after the year of attainment of age 21." Record at 13; 42 U.S.C. § 415(b)(2)(iii).  Elshinnawy turned 21 in 1954.  He attained the age of 62 in 1995.  Therefore, the proper number of elapsed years was 40 (1955-1995), as the Council correctly determined.

Second, the Council has shown that time spent as a student is not considered a period of disability.  Elshinnawy asserts that his five years as a student should be considered as a disability since during that time of study, he was unable to work, and thus unable contribute to Social Security.  However, the Appeals Council correctly noted that there is "no statutory or regulatory authority to grant this request." Record at 14.  This court has similarly found no authority supporting this argument.  Thus, Elshinnawy's five years as a student are not properly excluded from his total elapsed years.

B.     The Windfall Elimination Provision

The Appeals Council was also correct in determining that the amount of Elshinnawy's RIB was properly calculated using the WEP. When Elshinnawy received his first RIB check, he was also receiving a pension from non-covered employment. Record at 55, 187. This pension was from military employment, which was not covered by Social Security. See Doyle v. Barnhart, 2005 WL 713343 (E.D. Pa.) (finding that the WEP was correctly applied to a claimant who received both Social Security benefits and a pension based on military employment). The WEP should therefore have been used to calculate his RIB from the beginning, in January 1998. Because the SSA did not apply the WEP to Elshinnawy until March 2000, Elshinnawy received an overpayment. Record at 56 (indicating that the amount of RIB went from $765.00 in February 2000 to $527.00 in March 2000).

C.     Elshinnawy's Right to Waiver of Recovery of the Overpayment

I also conclude that the Commissioner correctly denied Elshinnawy's request for waiver of recovery of the overpayment. As outlined above, waiver is appropriate when the claimant is 1) without fault in causing the overpayment, and 2) recovery would defeat the purpose of Title II of the Social Security Act. See supra, p. 2-3.

Here, there is substantial evidence that Elshinnawy was not "without fault." First, Elshinnawy knew from the date he first applied for benefits that his pension would offset the amount of Social Security benefits that he was receiving. Record at 37. Further, Elshinnawy agreed to notify the SSA of the amount of his CSA. Id. Third, once Elshinnawy got his final interim payment from the CSA on February 1, 1998, he did not immediately notify the SSA. Record at 116. He waited until June 26, 1998 to notify the SSA because the pension amount was not settled. Even if this delay was reasonable, Elshinnawy continued to receive the same amount of RIB until February 2000 when SSA discovered the error. This was almost two years after he first learned of his pension and 20 months after officially notifying the SSA of the CSA. Record at 115-6. Therefore, since Elshinnawy failed to notify SSA of material information and he

8

accepted a payment that he could have been expected to know was incorrect, there is substantial evidence supporting the Commissioner's conclusion that he was not without fault in causing the overpayment. Therefore, recovery cannot be waived.

Since Elshinnawy is not without fault, it is not necessary to analyze Elshinnawy's income and expenses to determine whether recovery would defeat the purpose of Title II. However, it should be noted that Elshinnawy has refused to submit his income and expenses to the SSA, even though the ALJ left the record open for that purpose. Record at 245-6. He has stated at his hearing and in an October 25, 2004, letter to the ALJ that it would be degrading to him to do so. Record at 41-8, 137-8, 242. Information of his complete financial situation would be necessary in order to properly assess this second prong of the test in order to waive recapture of the overpayment. Record at 13 and 36. Again, since Elshinnawy is not without fault, analysis of this issue is unnecessary.

V.  Conclusion

In accordance with the above discussion, I make the following

**RECOMMENDATION**

AND NOW, this 15th day of February, 2006, it is RESPECTFULLY RECOMMENDED that Plaintiff's motion for summary judgment be DENIED; and it is further RECOMMENDED that Defendant's motion for summary judgment be GRANTED.

/s/ Jacob P. Haet, MJ
_____
JACOB P. HART
UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| A.M. ELSHINNAWY | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| JO ANNE B. BARNHART, | : | |
| Commissioner of Social Security | : | NO. 05-3061 |

## ORDER

STENGEL, J.,

      AND NOW, this      day of      , 2006, upon consideration of the Plaintiff's Motion for Summary Judgment, and the Defendant's Motion for Summary Judgment, and after careful review of the Report and Recommendation of United States Magistrate Judge Jacob P. Hart, IT IS ORDERED that:

      1. The Report and Recommendation is APPROVED and ADOPTED.

      2. The Defendant's Motion for Summary Judgment is GRANTED.

      3. The Plaintiff's Motion for Summary Judgment is DENIED.

      BY THE COURT:

      _____

      LAWRENCE F. STENGEL, J.